NUMBER 13-04-00202-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

      IN
THE INTEREST OF J.J., J.S., J.E., AND C.E., MINOR CHILDREN.

 

     On appeal from the 24th District Court of Victoria County,
Texas.

 

                       MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices Hinojosa and Yañez

                         Memorandum
Opinion by Justice Hinojosa

 








This is an appeal from a final decree terminating
the parental rights of appellants, Cheryl Edwards and Jerry Edwards, and
awarding permanent managing conservatorship of the minor children, J.J., J.S.,
J.E., and C.E., to the Texas Department of Protective and Regulatory Services (ATDPRS@).[1]  Cheryl is the biological mother of J.J.,
J.S., J.E., and C.E., and Jerry is the biological father of J.E. and C.E.  Cheryl and Jerry each present separate issues
on appeal.  We affirm.

                                                   A.  Factual
Background

TDPRS initiated this termination proceeding
following an incident that occurred on November 1, 2002.  At approximately 7:30 p.m., Cheryl left her
children with teenage sitters while she went to a bar with a friend.  The sitters left the children alone and unattended,
and one of the twins fell off the couch and injured his nose.  Unable to reach Cheryl by telephone, the two
oldest children, J.J. (age 10), and J.S. (age 8), asked a neighbor for help,
and police were called at approximately 11:30 p.m.  Cheryl arrived home about 3:00 a.m.  The children were taken to a shelter pending
an investigation.  The children were
officially removed from the home the following Monday.

At the time of this incident, Cheryl was on deferred
adjudication community supervision for the offense of injury to a child.  This charge resulted from an incident that
occurred in February 2002, when Cheryl grabbed J.J., tried to throw him up the
stairs, and kicked him.  As a result of
the November 1, 2002 incident, Cheryl was convicted for the offense of
endangering a child and was still incarcerated at the time of the trial of this
case.  At the time of trial, as well as
on November 1, 2002, Jerry, a convicted sex offender, was also incarcerated.      








Trial evidence showed that Cheryl was referred to TDPRS a total of
thirteen times.  Six of these referrals
were validated with Areason to believe@ the alleged abuse occurred.  Several service plans were implemented by
TDPRS following the investigations, which required Cheryl to attend
counseling.  Cheryl admitted that she did
not attend counseling regularly as required by the service plans.  She admitted knowing that the conditions of
her community supervision prohibited her from going to bars and drinking
alcohol.  She also admitted knowing that
if she violated her community supervision, she could be sentenced to the full
range of prison time, and that it could be many years before she saw her
children again.  

The record shows that Cheryl has used
illegal drugs since she was sixteen years old. 
Despite TDPRS service plans requiring Cheryl to enter a drug
rehabilitation program, Cheryl has never done so.  

The record further shows that Cheryl often
spanked her children with clothes hangers, belts, and fly swatters, sometimes
removing the end of the fly swatter and hitting the children with the exposed
metal ends.  Cheryl called the children
names, such as Afat ass,@ Abastard,@ Afaggot,@ Abitch,@ Af-word,@ Awhoe,@ and Awoosie.@ 
Once, Cheryl broke a vein in her hand from hitting the children too
hard.

While acknowledging that she had made past
mistakes, and despite the fact that she was incarcerated, Cheryl maintained
that she desired custody of her children. 
She insisted that she had attempted to improve herself during her
incarceration by attending an anger management class, Atwelve-step@ classes, and a leadership class.  

J.J., J.E., and C.E. are presently in stable
foster homes, while J.S. is residing in the Helping Hand Home for Children,
where he is being treated for bipolar disorder.

                                   B.  Standard
of Review for Termination

                                              of
Parent-Child Relationship   

 








An individual's parental rights may be
terminated only if the state proves and the trial court finds by clear and
convincing evidence that (1) the parent engaged in conduct constituting at
least one of the statutory termination grounds enumerated in section 161.001(1)
of the family code and (2) termination is in the child's best interest.  Tex.
Fam. Code Ann. ' 161.001 (Vernon 2002); In re C.H.,
89 S.W.3d 17, 23 (Tex. 2002).  Some of
the common factors that courts use to evaluate the best interest of a child in
a given case are (1) the emotional and physical needs of the child now and in
the future, (2) any emotional and physical danger to the child now and in the
future, (3) the parental abilities of the individuals seeking custody, (4) the
programs available to assist those individuals to promote the best interest of
the child, (5) the plans for the child by those individuals or by the agency
seeking custody, (6) the stability of the home or proposed placement, (7) the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one, and (8) any excuse for the acts or omissions
of the parent. See Holley v. Adams, 544 S.W.2d 367, 372 (Tex.
1976).  This is not an exhaustive list
and other factors also may be considered where appropriate.  Holley, 544 S.W.2d at 372.

                                             C.  Appeal
of Cheryl Edwards

                                                                 1.  Anders Brief








Cheryl=s court-appointed counsel filed an Anders
brief in which he concluded that, after a thorough review of the record, Cheryl=s appeal is frivolous and without
merit.  See Anders v. California,
386 U.S. 738 (1967).[2]  The
brief meets the requirements of Anders as it presents a professional
evaluation of why there are not arguable grounds for reversal.  See Stafford v. State, 813 S.W.2d 503,
510 n.3 (Tex. Crim. App. 1991). Cheryl=s counsel has certified that he has
forwarded a copy of the brief to Cheryl and informed her of her right to
examine the appellate record and to file a pro se brief.  No pro se brief has been filed by Cheryl.

Upon receiving a Afrivolous
appeal@ brief, the appellate courts must conduct Aa full examination of all the proceedings to decide
whether the case is wholly frivolous.@  Penson v.
Ohio, 488 U.S. 75, 80 (1988); see Garza v. State, 126 S.W.3d 312,
313 (Tex. App.BCorpus Christi 2004, no pet.).  We have carefully reviewed the appellate
record and counsel=s brief.  We
find nothing in the record that might arguably support Cheryl=s appeal.

We affirm the trial court=s judgment terminating Cheryl=s parental rights.

                                                             2.  Anders Counsel

In accordance with Anders, counsel
has asked permission to withdraw as counsel for Cheryl.  See Anders, 386 U.S. at 744.  An appellate court may grant a counsel=s motion to withdraw filed in connection
with an Anders brief.  Moore v.
State, 466 S.W.2d 289, 291 n.1 (Tex. Crim. App. 1971); see Stafford,
813 S.W.2d at 511.  We grant counsel=s motion to withdraw as counsel for
Cheryl.  

We order counsel to promptly advise Cheryl
of the disposition of this case and the availability of further appellate
review.  See Ex parte Wilson, 956
S.W.2d 25, 27 (Tex. Crim. App. 1997) (per curiam).

                                              D.  Appeal
of Jerry Edwards








In a single issue, Jerry contends the trial
court failed to timely appoint counsel to represent him in the termination
proceeding, thereby depriving him of his right to counsel as required by
section 107.013 of the Texas Family Code.  See Tex.
Fam. Code Ann. ' 107.013 (Vernon Supp. 2004-05).  He also contends that the failure to timely
appoint counsel to represent him deprived him of effective assistance of
counsel.

TDPRS filed its original petition for
termination on November 4, 2002.  The
record does not reflect that Jerry requested appointment of counsel at that
time.  In his brief, Jerry admits the
trial court appointed counsel for him in October 2003.  The hearing on the termination of Jerry=s parental rights was held on February 17,
2004.    

Section 107.013(a) of the Texas Family Code requires
the trial court to appoint an attorney to represent an indigent parent who
opposes a suit seeking termination of his or her parent-child
relationship.  See Tex. Fam. Code Ann. _ 107.013(a) (Vernon Supp. 2004-05).  The
complete failure of a court to appoint counsel for indigent parents constitutes
reversible error. See In re M.J.M.L., 31 S.W.3d 347, 354 (Tex. App.BSan Antonio 2000, pet. denied).  However,
the statute does not establish a deadline by which the court must appoint
counsel.  See Tex. Fam. Code Ann. _ 107.013(a); In the Interest of J.R.P., 55 S.W.3d 147, 149 (Tex. App.BCorpus Christi 2001, pet. denied).

We hold the appointment of counsel eleven
months after the petition for termination was filed, but four and one-half
months before trial, does not violate section 107.013 of the Texas Family
Code.  Furthermore, because we have held
that the timeliness of the appointment of counsel was sufficient under section
107.013, and Jerry=s ineffective assistance claim is based on
the untimely appointment of counsel, we need not address this sub-issue.   See Tex.
R. App. P. 47.1.  Jerry=s sole issue is overruled.

 

 








We affirm the trial court=s judgment terminating Jerry=s parental rights.

 

FEDERICO G. HINOJOSA

Justice

 

 

Concurring and Dissenting Memorandum Opinion

by Justice Yañez

 

Memorandum Opinion delivered and filed this

the 13th day of April, 2006.











[1]The decree also terminated
the parental rights of Danny Smirl, the biological father of J.S., and  AUnknown Father,@ the biological father of J.J., but they are not
parties to this appeal.





[2] This Court, as well as several of
our sister courts, have held that Anders procedures apply in parental
rights termination cases.  See Porter v. Tex. Dep=t of Protective & Regulatory
Servs., 105 S.W.3d
52, 56 (Tex. App.BCorpus Christi 2003, no pet.).  See also In re L.D.T., 161 S.W.3d 728,
731 (Tex. App.BBeaumont 2005, no pet.); Taylor
v. Tex. Dep't of Protective & Regulatory Servs., 160 S.W.3d 641, 646-47
(Tex. App.BAustin 2005, pet. denied);
In re D.E.S., 135 S.W.3d 326, 329 (Tex. App.BHouston [14th Dist.] 2004,
no pet.); In re K.D., 127 S.W.3d 66, 67 (Tex. App.BHouston [1st Dist.] 2003,
no pet.); In re K.M., 98 S.W.3d 774, 776-77
(Tex. App.BFort Worth 2003, no pet.); In
re E.L.Y., 69 S.W.3d 838, 841 (Tex. App.BWaco 2002, no pet.); In re K.S.M., 61 S.W.2d
632, 634 (Tex. App.BTyler 2001, no pet.).